IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINA J. WILBORN,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

    Defendant.

Case No. 3:14-cv-00245-AA

OPINION AND ORDER

Alan R. Unkeles
3000 N.W. Stucki Place, No. 230
Hillsboro, OR 97124
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97201

Thomas M. Elsberry
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Attorneys for defendant

1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff brings this action pursuant to the Social Security Act (Act) to obtain judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for supplemental security income (SSI) and disability insurance benefits (DIB) under the Act. The Commissioner's decision is affirmed and this case is dismissed.

## DISCUSSION

Plaintiff argues that the ALJ erred by: 1) failing to consider that her impairments met the listing for inflammatory arthritis at step three of the evaluation process; 2) failing to provide substantial evidence in support of his Residual Functional Capacity (RFC) finding; 3) failing to consider her testimony regarding her past relevant work and also failing to resolve the inconsistencies between the Dictionary of Occupational Titles (DOT) and the vocational expert's (VE) characterization of her past relevant work; and 4) failing to accept the opinion of her treating physician. Pl.'s Br. 19.

The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

2 - OPINION AND ORDER

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

I.  Consideration of Plaintiff's Impairments at Step Three

Plaintiff argues that the ALJ erred at step three by failing to consider whether she met listing 14.09 for inflammatory arthritis from December 2009 through December 2011. Plaintiff makes two assertions in support of her argument. First, plaintiff argues that she suffers from inflammatory bowel disease (Crohn's disease) and "inflammatory arthritis involving peripheral joints may be associated with disorders such as inflammatory bowel disease." Pl.'s Br. 11-12.

Second, plaintiff argues that she meets the two criteria for Listing 14.09. Specifically, plaintiff argues that treatment notes following a surgery she had on her right thigh in December 2009 show that she meets the first criteria of Listing 14.09, which is a "deformity of a peripheral weight

3 - OPINION AND ORDER

bearing joint." Pl.'s Br. 11. Moreover, plaintiff argues that she meets the second criteria of listing 14.09 because "physical therapy notes show that [she] was not able to ambulate effectively until discharge from physical therapy in December 2011." Id.

Step three requires the ALJ to consider the severity of the claimant's impairment by comparing the impairment to those listed in Appendix I of the Regulations (the listings). 20 C.F.R. Part 404, Subpt. P, App. I. The listings describe specific impairments of each major body system, which are "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525(a), 416.925(a). Because the listings are "designed to operate as a presumption of disability that makes further inquiry unnecessary . . . the Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity that the statutory standard." Sullivan v. Zelby, 493 U.S. 521, 531, (1990). Specifically, "the listings define impairments that would prevent an adult, regardless of [her] age, education, or work experience, from performing any gainful activity, not just substantial gainful activity." Id. (internal citation omitted).

Most of these impairments are "permanent or expected to result in death." Id. "For all others, the evidence must show

4 - OPINION AND ORDER

that the impairment has lasted or is expected to last for a continuous period of at least 12 months." Id.

For a claimant to show that her impairment matches a listing, it must meet all the specified medical criteria. Zelby, 493 U.S. at 531. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. See Social Security Ruling (SSR) 83-19. To be found disabled under Listing 14.09, a claimant must (1) suffer from persistent inflammation or persistent deformity of one or more peripheral weight bearing joints; and (2) the inflammation or deformity must cause an inability to ambulate effectively. Id. The inability to ambulate effectively "means an extreme limitation of the ability to walk, such as an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. 20 C.F.R. pt. 404, subpt. 1 §14.00 (C)(6).

Here, the record reveals that plaintiff's Crohn's disease was in remission during of the relevant time period. Specifically, in January 2012, plaintiff's treating physician, Dr. Jennifer Lietzke, M.D., wrote that plaintiff's "Crohn's disease was previously very active until about two years ago." Tr. 1013. Thus, according to plaintiff's own treating physician, plaintiff's Crohn's disease was no longer active in

5 - OPINION AND ORDER

January 2010. Moreover, the record reveals that the ALJ also considered plaintiff's Crohn's disease, but similarly found that it was "in remission." Tr. 20. Consequently, because the evidence reveals that plaintiff's Crohn's disease was in remission, or at least "no longer very active," beginning in January 2010, this Court finds that the ALJ did not err by failing to consider whether plaintiff met Listing 14.09 for inflammatory arthritis from December 2009 through December 2011 because her Crohn's disease.

I also reject plaintiff's second argument that she meets the two criteria for listing 14.09. Specifically, the treatment notes from December 2009 that plaintiff relies on in support of her argument that she meets the first criteria of listing 14.09, fail to demonstrate that she has a deformity of a peripheral weight bearing joint or that she was unable to ambulate effectively for a continuous period of at least 12 months. Critically, the treatment notes plaintiff relies on reveal that she was diagnosed with a "soft tissue infection" in her leg and not a deformity of a peripheral weight bearing joint. Tr. 680. Moreover, the same treatment notes reveal that following the surgery on plaintiff's leg, and upon discharge from the hospital, Dr. Lyle Bruce Ham, M.D., opined that plaintiff's soft tissue infection was "improved," that "physical therapy had

6 - OPINION AND ORDER

worked with her to ambulate," and that plaintiff's only physical restrictions were from lifting heavy objects weighing over ten pounds for six weeks. Tr. 680-681.

In addition to Dr. Ham's finding above that contradicts plaintiff's assertion that she meets listing 14.09 for inflammatory arthritis, several other doctors made similar findings that she was able to ambulate effectively during the relevant time period. For example, on January 8, 2010, the medical report of Dr. Jennifer M. Watters, M.D., reveals that plaintiff told her she was "walking a lot and climbing stairs without difficulty." Tr. 846. Three months later, on April 25, 2010, Dr. Michael J. Munly, M.D., observed that plaintiff "was able to ambulate and demonstrated progression toward independence with most ADLs and mobility tasks." Tr. 757-58. On October 15, 2010, Dr. George Koval, M.D., opined that "[plaintiff] is ambulating without difficulty." Tr. 884.

Consequently, because the record reveals that plaintiff suffered from a soft tissue infection rather than a deformity of a peripheral weight bearing joint, and multiple doctors opined that she was able to ambulate effectively during the relevant time period, this Court finds that plaintiff failed to proffer a plausible theory as to how her Crohn's disease that was in remission for most of the relevant time period, or her soft

7 - OPINION AND ORDER

tissue infection in her leg meet the criteria of Listing 14.09 for inflammatory arthritis. Accordingly, this Court finds that the ALJ did not err at step three.

## II. Evidence to Support the RFC

Plaintiff argues that the ALJ's RFC finding is "unintelligible and, therefore, cannot reasonably be a base for substantial evidence." Pl.'s Br. 12. The RFC states that plaintiff can perform light work, but she "must be allowed to sit or stand alternately at thirty to forty-five minute intervals for five to ten minutes, during which time she can remain on task." Tr. 22. Specifically, plaintiff argues that "because the reader cannot reasonably grasp the meaning of 'thirty to forty-five minutes for five to ten minutes,' the RFC finding is unintelligible." Pl.'s Reply Br. 4.

Plaintiff also argues that although "the meaning [of the RFC] is clear if the reader refers to her testimony that her leg goes numb if she stands or sits for five to ten minutes, . . . the agency left [this] out of its decision at the administrative level" and was required to draft its decisions without the help of a reviewing court. Pl.'s Reply Br. 3. Plaintiff further argues that "although plausible, the Commissioner asks the Court to add meaning and reason that the [ALJ's] decision leaves out" and a reviewing court is constrained "from affirming the

8 - OPINION AND ORDER

decision of an agency on a ground that the agency did not invoke in making its decision." Id. at 2-3.

The RFC is the maximum a claimant can do despite her limitations. See 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. A reviewing court is constrained from affirming the decision of an agency on a ground that the agency did not invoke in making its decision. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001). "If evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld." Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the Court finds plaintiff's above argument flawed for two reasons. First, plaintiff's argument that the ALJ's statement "thirty to forty-five minutes for five to ten minutes" in the RFC is unintelligible misquotes the RFC. Critically, plaintiff's citation of the RFC omits the words "alternately at" and "intervals." When the words plaintiff omitted from the RFC are added back in, and the RFC is read as the ALJ wrote it, that plaintiff must be allowed to sit or stand alternately at thirty

9 - OPINION AND ORDER

to forty-five minute intervals for five to ten minutes, it becomes clear that plaintiff is limited to light duty work and that every thirty to forty-five minutes, she must be allowed to alternate between the sitting and standing positions for five to ten minutes.

Second, the record reveals that the ALJ considered plaintiff's testimony about her leg pain when he formulated the RFC. Specifically, during his examination of the evidence used to develop the RFC, the ALJ noted that "[plaintiff's] right leg hurts and becomes numb all the time, whether she sits or stands, [however,] the numbness is relieved temporarily by stretching or massaging." Tr. 24. This language mirror's plaintiff's testimony during the administrative hearing on November 30, 2012, when she told the ALJ that her leg "goes numb when [she is] sitting down for a long period of time or standing up," but by standing up and stretching for "maybe five [or] ten minutes" she can relieve the numbness. Tr. 47.

Consequently, in addition to the RFC being clear when read as the ALJ wrote it, the record also reveals that plaintiff's statements regarding her leg pain were properly considered by the ALJ when formulating the RFC. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss

10 - OPINION AND ORDER

v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Thus, the ALJ's RFC is upheld.

III. <u>ALJ's Consideration of Plaintiff's Past Relevant Work</u>

Plaintiff argues that the ALJ erred at step four by finding that she could return to her past relevant work as an employment specialist. Pl.'s Br. 13. Plaintiff makes two specific assertions in support of her argument. First, plaintiff asserts that the ALJ erred by ignoring her testimony about her past relevant work without comment and instead relied on the VE's testimony. <u>Id</u>. Second, plaintiff asserts that "no entry in the DOT bears the title employment training specialist" and VE testimony does not state for the record the task elements of that occupation. Pl.'s Br. 14.

A VE's testimony can be useful, but is not required at step four. <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 2001). "The [VE] merely has to find that a claimant can or cannot continue his or her past relevant work." <u>Pinto</u>, 249 F.3d at 845. "The claimant is the primary source of vocational documentation and statements by the claimant regarding past work are generally sufficient for determining the skill level,

11 - OPINION AND ORDER

exertional demands, and nonexertional demands of such work." SSR 82-92, available at 1982 WL 31386.

Here, the record reveals that the ALJ considered plaintiff's testimony regarding her past relevant work. Specifically, the transcript of the administrative hearing on November 30, 2012 reveals that the ALJ asked plaintiff about her past work at Portland Community College (PCC) and that plaintiff provided the ALJ with details about "everything that that job encompassed in terms of [her] duties." Tr. 57. Then, later in the same hearing, the ALJ asked the VE to describe plaintiff's previously described work at PCC in "vocational terms" because it "appear[ed] as though [she] has past relevant experience." Tr. 65.

The VE responded to the ALJ's request by stating that plaintiff's job at PCC could be classified as an employment training specialist with a light exertional level and an SVP of 6. TR. 65-66. Critically, the VE opined that a person with plaintiff's limitations could perform this job "either as she performed it or as it's generally performed in the national economy." Tr. 67. When asked by the ALJ if there were "any readily transferrable skills from a position like that that could transfer to sedentary without significant vocational

12 - OPINION AND ORDER

adjustment," the VE stated that the skills from that occupation transfer to a job development specialist, which is a sedentary job with an SVP of 5. TR. 66.

Consequently, because the VE opined that plaintiff could perform the duties of her previous job at PCC as plaintiff described them during the hearing, and because the VE noted that plaintiff's skills could transfer to the occupation of a job development specialist, an occupation title plaintiff did not challenge as missing from the DOT, and because a job development specialist has an SVP that is lower than the job the VE opined plaintiff could actually perform, this Court finds it immaterial that no entry in the DOT bears the title employment training specialist. Consequently, this Court finds that the ALJ did not err at step four by finding that plaintiff could return to her past relevant work.

Moreover, assuming arguendo that the ALJ erred at step four, the ALJ also established at step five that other work exists in the national economy that plaintiff could perform. TR. 28-30, 67-69. Specifically, after consideration of the RFC, the VE's testimony, and plaintiff's age, education, and work experience, the ALJ found that plaintiff could perform the duties of an office helper, storage facility rental clerk, and

13 - OPINION AND ORDER

counter clerk. Tr. 29. As such, because the ALJ found plaintiff not disabled at step five, any error at step four would be harmless.[1]

IV. Weight Given to Plaintiff's Doctor's Opinion

Plaintiff argues that the Commissioner failed to give clear and convincing reasons to reject the opinion of Dr. Lietzke, her treating physician. Pl.'s Reply Br. 5. Specifically, plaintiff argues that inconsistencies with other medical evidence do not provide a reasonable basis to give little weight to the opinion her treating doctor. Pl.'s Br. 16. Moreover, plaintiff argues that the ALJ removed her activities of daily living (ADL) from context when discrediting the opinion of her treating doctor and "nothing logical or reasonable make[s] these facts inconsistent with [the] treating physician's opinion that plaintiff is disabled and not able to work." Pl.'s Reply Br. 7-8.

In January 2010, Dr. Lietzke opined that plaintiff should not engage in any manual labor, including standing or walking other than as needed for essential daily tasks and should not

---

[1] Plaintiff makes a cursory assertion of error at step five in her conclusion and premises her argument on a presupposition that the ALJ erred by rejecting the opinion of her treating physician. Pl.'s Br. 19. However, as the following section reveals, the ALJ did not err by rejecting the opinion of plaintiff's treating physician.

14 - OPINION AND ORDER

work or do volunteer work due to the risk of falls and injuries. Tr. 27, 1077. On January 23, 2012, Dr. Lietzke opined that plaintiff was unable to work for the past several years. Tr. 27, 1013.

The ALJ evaluated Dr. Lietzke's opinion and held that it was not entitled to controlling weight because it was inconsistent with plaintiff's "robust" ADL's and was "inconsistent with her own treatment notes showing [plaintiff] walking fifteen to twenty minutes daily." Tr. 27-28.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The medical opinion of a claimant's treating physician is entitled to "special weight" because she "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir. 1989)(citation omitted). Disability opinions, however, are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). Physicians may, however, provide opinions on the ultimate issue of disability, for example, whether a claimant is capable of any work, given the claimant's limitations. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). The ALJ is

15 - OPINION AND ORDER

not bound by the uncontroverted opinions of physicians on disability, but cannot reject them without presenting clear and convincing reasons for doing so. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. Id. Although the contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

Additionally, while an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999). Discrepancies between a treating doctor's opinion and her clinical notes and other observations and opinions regarding the claimant's capabilities provide a clear and convincing reason for not relying on the doctor's opinion. Bayliss, 427 F.3d at 1216.

16 - OPINION AND ORDER

Here, the record reveals that Dr. Lietzke's opinion of disability was contradicted by the opinions of state agency consultants. Tr. 100-19. Consequently, the specific and legitimate standard applies. The record also reveals that Dr. Lietzke's opinion was inconsistent with plaintiff's ADL's. Specifically, the ALJ found that plaintiff's ADL's included "caring for her minor children, driving them to school and back, attending school functions/sporting events, walking a dog, cooking, cleaning, using a computer, and going to the store with friends." Tr. 27, 321-25. Moreover, the record reveals discrepancies between Dr. Lietzke's opinion and her clinical notes regarding plaintiff's capabilities. Specifically, three weeks prior to the issuance of Dr. Lietzke's opinion that plaintiff should not stand or walk, her treatment notes state that plaintiff was walking fifteen to twenty minutes daily. Tr. 1079.

Consequently, because Dr. Lietzke's opinion of disability was contradicted and the ALJ pointed to specific and legitimate examples of Dr. Lietzke's opinion being inconsistent with plaintiff's ADL's, as well as specific inconsistencies within her own treatment notes, this Court finds that the ALJ properly discredited Dr. Lietzke's opinion by providing specific and

17 - OPINION AND ORDER

legitimate reasons supported by substantial evidence in the record. As such, the ALJ's credibility finding is affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 18th day of May 2015.

_____
Ann Aiken
United States District Judge